UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 09-67-GWU

DARRELL HOLLARS, PLAINTIFF,

VS.  **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

Darrell Hollars brought this action to obtain judicial review of an unfavorable administrative decision on his application for Disability Insurance Benefits. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

1

> Impairments). If so, disability is conclusively presumed and benefits are awarded.
>
> 4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.
>
> 5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician

than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the

09-67  Darrell Hollars

ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional

impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Hollars, a 53-year-old former gravel truck driver, suffered from impairments related to a mild annular tear, diabetes, and hypertension. (Tr. 16, 19). While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of light level work. (Tr. 17, 19). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 20). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Id.).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question initially presented to Vocational Expert Katherine Bradford included such restrictions as (1) an inability to lift, push or pull more than 30 pounds; (2) an inability to sit or stand for time periods longer than 30 to 60 minutes; (3) an inability to ever climb ladders, ropes or scaffolds; (4) a need to avoid exposure to body vibrations; and (5) an inability to more than occasionally climb stairs, balance, stoop, kneel, crouch, or crawl. (Tr. 355). The witness identified a significant number of light level positions which could still be performed including such jobs as assembler (4,400 statewide positions), grader/sorter (650 statewide positions), and machine tender (2,600 statewide positions). (Tr. 356). The ALJ later changed the restrictions to include (1) an inability to more than occasionally bend, squat and reach above shoulder level; (2) an inability to ever crawl or climb; (3) an inability to ever push or pull or to use foot controls; and (4) a "mild" restriction against driving automotive equipment. (Tr. 357). Bradford reported that the previously cited jobs could still be done. (Id.). Therefore, assuming that the vocational factors considered by the vocational expert fairly characterized Hollars' condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the residual functional capacity assessment finding, the ALJ based his findings heavily upon the opinion of Dr. Amr El-Naggar, a treating neurosurgical specialist. (Tr. 19). The only limitation indicated by Dr. El-Naggar was that Hollars should be able to lift up to 30 pounds following his release from Dr. Harold Rutledge, a treating pain specialist. (Tr. 268). This limitation was presented to the vocational expert.

Dr. Rutledge declined to complete a residual functional capacity form unless the plaintiff underwent a functional capacity evaluation or similar test. (Tr. 282). The doctor did indicate that Hollars would not be able to return to his past work (Id.) but also suggested that alternative work might be sought (Tr. 286). Thus, Dr. Rutledge does not appear to have believed that the plaintiff was totally disabled.

Dr. David Swan (Tr. 304-311) and Dr. Robert Brown (Tr. 312-319) each reviewed the record and opined that Hollars could perform medium level work, restricted from a full range by such non-exertional limitations as an inability to more than occasionally climb ramps or stairs, balance, stoop, kneel, crouch and crawl and a need to avoid concentrated exposure to vibration. The ALJ's findings were essentially consistent with these opinions. These and the aforementioned treating source reports provide substantial evidence to support the administrative decision.

Dr. Winchester, a treating family physician at Winchester, Patton & Burgess, identified extremely severe physical restrictions on an assessment form dated

8

December, 2006. (Tr. 323). Another form with very severe limitations was submitted following the January, 2007 hearing (Tr. 324-326) at the request of the ALJ who wanted the doctor to clarify how he came up with these severe restrictions (Tr. 358). The opinion of Dr. Winchester was offset by that of Dr. El-Naggar, a treating specialist. The administrative regulations provide that "we generally give more weight to the opinion of a specialist about medical issues related to his or her area of speciality than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5). Furthermore, the ALJ noted that the doctor, despite the opportunity to identify the objective clinical factors which supported his opinion, had not done so. (Tr. 19). The ALJ noted that treatment records from Dr. Winchester have revealed normal reflexes and sensation in December of 2005 and recorded no objective findings beyond vital signs. (Tr. 17, 255-259). Therefore, the ALJ properly rejected the opinion of Dr. Winchester.

 Hollars asserts that the ALJ did not take into consideration his ability to hold a job for a significant time period. However, the only physician of record who suggested that a job could not be held for a significant length of time was Dr. Winchester. As previously noted, the court agreed that good reasons existed for this opinion not to be binding. Therefore, the undersigned must reject the claimant's argument.

09-67  Darrell Hollars

Hollars suggests that his condition should have been found to meet the requirements of one of the Listings of Impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1. The plaintiff failed to specify which Listing section was met and how. The ALJ considered the case under § 1.00 dealing with back disorders and opined that the claimant's annular tear was not of sufficient severity to meet or equal a Listing. The court finds no error.

Hollars argues that the ALJ did not properly evaluate his subjective pain complaints. Pain complaints are to be evaluated under the standards announced in Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986): there must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

In the present action, Hollars was found to be suffering from a potentially painful condition. However, even if he could be found to have satisfied the first prong of the so-called Duncan test, the claimant does not meet either of the alternative second prongs. An MRI scan of the cervical spine (Tr. 242) in October of 2005 was unremarkable. An MRI scan of the lumbar spine revealed a small annular tear at L5-S1 with no sign of focal disc extrusion or bony spinal stenosis. (Tr. 243). A CT scan of the brain was essentially unremarkable. (Tr. 244). Dr.

09-67  Darrell Hollars

Rutledge found no neurological deficits upon physical examination in February of 2006. (Tr. 247). The plaintiff reported to a physical therapist at the Total Rehab Center in March of 2006 that he was not taking his prescribed pain medication. (Tr. 260). Thus, the medical evidence does not appear sufficient to confirm the severity of the alleged pain and objective medical evidence would not appear to be consistent with the plaintiff's claims of disabling pain. Therefore, the ALJ would appear to have properly evaluated Hollars' pain complaints.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 30th day of November, 2009.

Signed By:

G. Wix Unthank

United States Senior Judge